HELEN YARSH, Plaintiff-Appellee, *v.* LAWRENCE W. WHALEN, Circuit Clerk of La Salle County, Defendant-Appellee—(NORTHERN INDIANA PUBLIC SERVICE COMPANY, Intervenor-Appellant, *v.* LAWRENCE W. WHALEN, Circuit Clerk of La Salle County *et al.*, Defendants-Appellees.)

(No. 70-148;

Third District—March 17, 1972.

Walter D. Boyle, of Hennepin, for appellant.

Robert E. Richardson, State's Attorney, and Peter Ferracuti and Robert E. White, all of Ottawa, for appellees.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Appellant, Northern Indiana Public Service Company, hereinafter referred to as NIPSCO, and Appellee, Helen Yarsh, commenced separate actions in the Circuit Court of La Salle County claiming money in the hands of Lawrence W. Whalen, Clerk of the Circuit Court of La Salle County. The Clerk of the court made no claim to any part of the money. This is an appeal from the judgment of the court determining that Helen Yarsh was entitled to the money as against the claim of NIPSCO.

The relevant issue for our consideration is whether or not there is sufficient evidence in the record to justify the decision of the trial court. Briefly the facts are as follows. Milton Knarian and LaVerne Sayler were apprehended by police in La Salle Illinois. Each was subsequently indicted for attempt-burglary and theft from an Illinois Power Company facility. Knarian jumped bail and has not been reapprehended. At the time of his arrest, police found, on Knarian's person, a three inch thick

wrapped package containing $21,000 in U.S. currency. Pursuant to questions by the La Salle Chief of Police, Knarian first stated that the money belonged to him and his wife and then stated that it really belonged to his mother-in-law, Helen Yarsh. The money was eventually deposited with Lawrence W. Whalen. Helen Yarsh sued for replevin. NIPSCO claimed that the money was the proceeds of the sale of copper wire stolen from their facilities and asked the court to declare a constructive trust of the $21,000 for the Company's benefit. The two lawsuits were consolidated for trial. The court, sitting without a jury, found in favor of Helen Yarsh. The appellant's main contention is that the evidence did not justify the judgment of the trial court.

Helen Yarsh testified that in 1963 she and her late husband, Charles Yarsh, Jr., had saved approximately $5,000 cash and owned a rare coin collection. The cash was kept in a black box in her home. In November, 1963, her husband was killed and Helen Yarsh received a $16,500 net share as the result of a wrongful death action. Her attorney in that case corroborated her testimony. Because of her husband's death Helen Yarsh also received $1,397.94 from a credit union account, a total of $7,555.67 in life insurance benefits, $1,260 for automobile damage, $1,000 medical pay and $350 from the sale of her late husband's tools. In 1965 she received $3,300 in insurance proceeds for fire damage to her home. In 1967 Helen Yarsh received $11,702.82 as her net share of an estate. In addition she worked as a waitress, received social security payments of $200 per month and a navy pension that varied between $43 and $64 per month. During the same period Helen Yarsh testified to specific gifts and loans to her children aggregating $11,900. Otherwise she testified that her income from wages and pensions were more than sufficient to cover her living expenses.

With reference to identification of the money Helen Yarsh testified that she wrapped the money in aluminum foil and covered the foil completely with masking tape until it looked like a tan package. She could not state exactly how many of each denomination of bills she had but her description of the bills approximated those found in the package.

Helen Yarsh testified that on April 4, 1968, after a telephone call from her pregnant daughter Lana, she made immediate plans to go to Cincinnati, Ohio to help her daughter move. Immediately thereafter and two days prior to Milton Knarian's arrest, Helen Yarsh met with her son-in-law Milton Knarian, her daughter Sharon Knarian and a friend Mabel Schwabe at a Valparaiso, Indiana restaurant. Sharon Knarian was employed at the restaurant. According to Helen Yarsh it was there that she handed the package of money to Milton Knarian. Mabel Schwabe, while

in the restaurant, saw Helen Yarsh hand Milton Knarian a package approximately two inches thick. According to Sharon Knarian she was also present and although she did not see the package change hands she heard her mother admonish Milton Knarian to see that the money was either placed in a safety deposit box in the Bank of Indiana or to otherwise place it in a savings account.

In support of its claim NIPSCO presented six NIPSCO storekeepers from its various facilities to testify that quantities of copper wire had been stolen from their respective facilities during the winter and spring of 1968. Kenneth Heimann testified that, in the presence of LaVerne Sayler and himself, Milton Knarian admitted stealing copper wire from NIPSCO, told them of selling the wire to a junk yard and gave them a demonstration on how to distinguish between marketable copper wire and non-marketable aluminum wire. He further testified that Knarian urged both of them to accompany him on a copper wire theft and proceeded to show them markings on an Indiana road map which allegedly indicated the towns which he had already "hit". LaVerne Sayler corroborated his testimony and stated further that on April 6, 1968, Knarian showed him a package that had 21,000 written on it and told Sayler that "its $21,000" that he "got it from NIPSCO copper wire".

In seeking to reverse the judgment of the trial court defendant argues the evidence supporting her claim is highly improbable and the only conclusion that reasonable minds could draw from the evidence is it fails to support appellee's claim and does support appellant's claim. Notwithstanding that the rule requires that all of the evidence be considered in its aspect most favorable to the appellee the appellant has primarily directed its attention to the weaknesses of the appellee's evidence and the strength of its own evidence.

The evidence presented in behalf of Helen Yarsh tended to prove that she could have had and did have $21,000 in April, 1968, that she gave a package containing the money to her son-in-law, Milton Knarian shortly before his arrest and that the package in Milton Knarian's possession at the time of his arrest was the package of money she had given him.

In seeking to discredit appellee's evidence the appellant argues the implausibility of Helen Yarsh keeping such a large sum of money in her house, in delivering the package of money to her son-in-law and the existence of some discrepancies in the description of the package and the bills contained therein.

The appellant's evidence tended to show that copper wire had been stolen from several of its facilities, that Milton Knarian was the thief and that the money in his possession at the time of his arrest was that received from the sale of the stolen copper wire.

In discrediting the evidence of appellant the appellee points out that the testimony of Heimann and Sayler concerns the uncorroborated admissions of a party who did not testify, that Sayler had been indicted for an offense occurring nearly a year and a half before his testimony and had not been brought to trial and that Heimann's testimony concerning Knarian's admissions to him were implausible. It is also pointed out by the appellee that there is a weak link in the evidence supporting appellant's claim namely that the money was money received from the sale of stolen copper wire. Evidence is lacking concerning the persons from whom Knarian received the money.

It is our conclusion that there is ample evidence supporting the trial court's determination bearing in mind that it was his duty to resolve the credibility problems. Nor do we believe that a different result is required by *Frank v. Hayes*, 25 Ill.App.2d 99, 166 N.E.2d 283, one of the principal cases relied upon by appellant. In that case the court affirmed the trial court's determination in favor of the plaintiff who claimed he was robbed by the defendant. The Appellate Court agreed with the trial court's characterization of appellant's claim as "fantastic" where it appeared that defendant denied any knowledge or interest in money found in his car at the time of his arrest. His memory improved only after he had been acquitted of the charge of robbery. In our opinion the evidence supporting appellee's claim in this case is neither inherently improbable nor fantastic. Finding no error in the judgment of the Circuit Court of La Salle County the judgment of the court is affirmed.

Judgment affirmed.

ALLOY, P. J., and SCOTT, J., concur.